Jambs J. Grisosta, J.
In this proceeding pursuant to article 78 of the CPLR, the petitioners are students at Queens College. As such, they are required to pay a “ consolidated fee ” of $65.25 each semester in order to attend the college. A portion of that fee, $7.25, is denominated by the college as a student activity fee and goes to pay for various extracurricular activities. Included in those activities is the publication of the student newspaper at Queens College, the Phoenix. Petitioners allege that they find this newspaper objectionable on political, moral and philosophical grounds and do not wish to contribute to its support. Accordingly, they sought to withhold payment of that part of their consolidated fee which they estimated to be their prorata contribution to the support of the Phoenix. Under threat of cancellation of their registration, the petitioners were forced to pay the full consolidated fee. They did so, while reserving their rights to challenge the college’s action. In this proceeding, petitioners seek a judgment which, in effect, will direct the college (the actual respondent is the former president of Queens College) to permit petitioners to register and attend classes without requiring them to pay that part of the consolidated fee which goes for the support of the Phoenix.
In a separate article 78 proceeding captioned De Vito v. Murphy and the Board of Higher Education, petitioner De Vito seeks similar relief with respect to registration for the summer 1971 semester. He wishes to withhold his full student activities fee, amounting to $4, because he objects to the uses to which his fees have been put in the past and, he anticipates, will continue to be put in the future.
The parties to both proceedings agree that the same legal issues are raised in each of them. The court agrees. Accordingly, this *1027 decision will be dispositive of both Fellner v. McMurray, Index No. 639/1971, and De Vito v. Murphy, Index No. 4792/1971 ; on the court’s own motion these proceedings are consolidated.
The petitioners have strenuously urged upon the court the contention that they are being deprived of property without due process of law because they are being forced to support a newspaper and various causes which are repugnant to them. However, the petitioners have also raised a more basic issue, the answer to which must precede any determination of the constitutional questions posed. That issue is whether the respondents may rightfully allocate any portion of the consolidated fee paid by students for the support of student activities.
Subdivision 4 of section 6202 of the Education Law provides, inter alia, that ‘ ‘ fees * * ° shall be administered by it [the Board of Higher Education] for collegiate or university purposes in connection with the units under its control ”. Subdivision 5 of section 6202 of the Education Law permits the board to “regulate” fees and to require students to pay “library, laboratory, locker and breakage fees Both before and after 1966, the board’s authority to require the payment of students’ fees has been derived from these portions of section 6202 of the Education Law. Prior to 1966, section 6208 of the Education Law provided that “ instructional fees ” received by the municipal. colleges were to be paid into the city treasury. These instructional fees are not relevant to the issues herein. What is relevant, however, is that prior to 1966 there was no provision in section 6208 of the Education Law or in any other statute, for the disposition by the board of noninstructional fees. Noninstructional fees included items such as laboratory and library fees. By the board’s own admission, student activity fees were also considered by the board to be “ noninstructional ’ ’ fees. For a reason soon to be apparent, the board now says that they considered student activity fees to be “noninstructional” for bookkeeping purposes only.
In 1966 the Legislature enacted the City University Construction Fund Act, sections 6270-6282 of the Education Law (L. 1966, ch. 782, § 4, eff. July 5,1966). Basically, the purpose of the fund created by that act was “ to provide facilities for the senior colleges of the city university” (Education Law, § 6273, subd. [a]). At the same time section 6208 of the Education Law, was amended to provide in pertinent part that 11 all instructional and non-instructional fees hereafter received from matriculated students by any public college [in the city university] * * * shall be accounted for and paid to the city university construction fund ”, (Education Law, § 6208, subd. 1; L. 1966, ch. 782, *1028 § 5, eff. July 1, 1966; emphasis supplied.) Despite the amendment of section 6208 of the Education Law the board and Queens College have continued to take a portion of the fees paid by students in attendance, to call it a student activity fee and to use it to pay for those activities. That money has not been “ accounted for and paid to the city university construction fund ’ ’.
The sole justification offered by respondents for their apparent violation of section 6208 of the Education Law is a resolution adopted by the Board of Higher Education on January 27,1969. That resolution was necessitated, according to an explanation appended thereto, because “ the City University Construction Fund has raised a question concerning the legality of our withholding student activity fees from deposit with the Fund ”. The resolution then goes on to adopt a “ redefinition ” of fees into three categories, “ instructional ”, “non-instructional” and “ student activity ”, and purports to validate the respondents’ continued use of fees received from matriculated students to pay for student activities. What is the effect of this resolution? Can it have the effect of authorizing the continuance of a practice which is in contravention of a specific enactment of the Legislature? In the court’s view, the answers to these questions are clear. If the board’s practice contravenes the provisions of section 6208 of the Education Law, as amended, and the court now holds that it does, the board’s effort at self-justification, as embodied in its resolution, is of no effect. Certainly, it cannot constitute authority for the board’s continued violation of that statute.
The basis for the court’s holding is quite simple. The board concedes that student activity fees were denominated by it as “non-instructional” fees, both before and at the time that section 6208 of the Education Law was amended. Regardless of the board’s motives in adopting that denomination, that was the fact. Then, section 6208 of the Education Law was amended. That amendment specifically affected “ non-instructional ” fees. Now, ex post facto, the board comes forward to say that student activity fees were not ‘ ‘ non-instructional ’ ’. In these circumstances, the board’s explanation is less than convincing and it would defy common sense and experience for the court to act upon it. To the extent that there is any merit to the board’s claim, it should have been the basis for an appeal to the Legislature rather than to this court.
Respondents contend that the general provisions of section 6202 of the Education Law constitute the authority for its continued use of student activity fees to pay for student activi *1029 ties. However, in order to «o hold, the court would have to torture the provisions of section 6208 of the Education Law. By every known rule of statutory construction, section 6208 has to be interpreted according to its literal meaning. ‘ ‘ The legislative intent is to be determined primarily from the language used in the act. * * * The language is generally construed according to its natural and most obvious sense, without resorting to artificial or forced construction.” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes [1942 ed], § 94). To the extent that the general provisions of section 6202 may appear to conflict with the particular provisions of section 6208, it is the general provisions which must yield to the particular. (McKinney’s Statutes, § 238.) Moreover, to the extent that there is any conflict between the two sections of the statute, it is section 6208 which was the later enactment and which must, therefore, prevail. (McKinney’s Statutes, § 398.) It is not necessary, however, for the court to hold that subdivision 4 of section 6202 of the Education Law was repealed by implication by the subsequent amendment to section 6208 of the Education Law. Subdivision 4 of section 6202 requires the board to administer “ fees ” for “ collegiate or university purposes ’ ’. By its enactment of the amendment to section 6208 the Legislature has now prescribed the manner in which and the purpose for which noninstructional fees are to be administered.
The respondents’ reliance on recent cases dealing with the State University is misplaced. (Cf. Matter of Huddleston v. Ketter, Sup. Ct., Erie County, May 11, 1971 ; Stringer v. Gould, 64 Misc 2d 89.) Those cases dealt with the issue of whether mandatory student fees could be used and were being used by the trustees of the State University in the manner prescribed by section 355 of the Education Law. There is nothing in the latter statute which is comparable to section 6208 of the Education Law. In fact, it is instructive to note that subdivision 5 of section 355 of the Education Law provides that ‘1 the state university trustees may assign to the state university construction fund * * * all or any portion of any moneys received ”. (Emphasis supplied.) The language which confers discretion upon the trustees of the State University stands in' bold relief when compared to the mandatory, nondiscretionary and all-inclusive language of section 6208 as amended.
The court is aware of the fact that its decision may have far-reaching consequences. Certainly, it is not the court’s intention or desire to declare that there shall be no more student activities. The court is also quite certain that the Legislature did not intend to bring about that result. What then is *1030 the alternative ? Section 6215 of the Education Law prescribes the budget process of the city university. It provides that the appropriate elected and appointive officials of the city shall include in the university’s proposed operating budget all moneys “ anticipated to be expended by the city of New York on behalf of or for the purposes of all approved graduate and undergraduate programs and services of the city university”. (Education Law, § 6215, subd. 1, par. c, subpar. [1]). It would appear that the cost of those programs and services which now come under the category of student activities could be included (and were intended by the Legislature to be included) in the budget of the city university. This would permit the uninterrupted continuance of student activities. It would also enable interested students and other citizens to express their views to their elected officials with respect to the publication of the Phoenix and the other uses for which funds are to be appropriated.
While the City University Construction Fund is not a party to this proceeding, the petitioners and the respondents have fully addressed themselves to the issue discussed above. Accordingly, the court has been able to dispose of this proceeding on the merits. In view of the basis of this decision, the petitioners are not entitled to withhold payment of any portion of their consolidated fees. However, the petition is granted to the extent of directing the respondents to pay the fees received from the petitioners to the City University Construction Fund.